IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INTERNATIONAL PARKING
MANAGEMENT, INC.,

    Plaintiffs,

    v.

ALEJANDRO GARCIA PADILLA, in his personal and official capacity as Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico,

    Defendants.

CIVIL NO. 06-2092 (JAG)

# REPORT AND RECOMMENDATION

## I. PROCEDURAL BACKGROUND

On October 30, 2006, plaintiff International Parking Management, Inc. ("International Parking"), a private corporation for profit organized under the laws of the Commonwealth of Puerto Rico, filed a complaint against defendant, Alejandro García Padilla ("Secretary García-Padilla") as the Secretary of the Department of Consumer Affairs ("DACO"), in his personal and official capacity.

Defendant Secretary García-Padilla was duly served with summons and failed to answer a timely complaint. Default was entered. The Court thereafter denied a motion to set aside default, as well as defendant's motion for reconsideration. The matter was referred to this Magistrate Judge for default judgment and for report and recommendation. After the

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 2

scheduling of a default hearing, plaintiff International Parking moved for judgment on the pleadings clarifying there was no need for an evidentiary hearing since the issues rested on legal contentions and it was not seeking monetary damages.

It is now proper to resolve plaintiff International Parking's motion for judgment on the pleadings, without the benefit of defendant Garcia-Padilla's position. (**Docket No. 10**).

## II.  INTRODUCTION

Plaintiff International Parking's claim is predicated under Title 42, United States Code, Section 1983, a civil rights violation. Plaintiff submits Rule No. 8 of the regulation for the operation of parking facilities in the Commonwealth of Puerto Rico, approved on January 22, 2004, establishes the maximum amount of money per hour which operators of parking facilities in Puerto Rico may charge. International Parking avers a distinction in said Rule 8 as to parking facilities that are roofed and those that are non-roofed, and the exemption to said regulation by those roofed parking facilities, are arbitrary and capricious and, thus, unconstitutional in violation of the Fifth and Fourteenth Amendments of the United States Constitution. As such, plaintiff International Parking is claims being deprived of property without due process of law and is also object of an equal protection violation.

Plaintiff International Parking filed this federal action seeking a declaratory judgment holding the provisions of Regulation No. 8, as applied to public parking areas, are unconstitutional and, thus, null and void. Plaintiff also seeks to obtain attorney's fees and costs of litigation.

## III.  STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

When deciding a Motion for Judgment on the Pleadings, the standard appear under Federal Rule of Civil Procedure 12(c).  The Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiffs' favor. Federal Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed but within such time as not to delay the trial." *Id*.  Because such motion in the majority calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the non-movant and draw all reasonable inferences therefrom to the non-movant's behoof. Rivera-Gómez v. de Castro, 843 F.2d 631, 635 (1st Cir.1988); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed.2004). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point. Rivera-Gómez, 843 F.2d at 635. *See* R.G. Financial Corp. v. Vergara-Núñez, 446 F.3d 178, 182 (1st Cir. 2006).

In the instant case defendant Secretary García- Padilla is in default as the Court denied the petition to set it aside and the request for reconsideration.  Thus, this Magistrate Judge finds herself in a most odd situation of construing as an oracle among the alleged mist of unconstitutionality raised by plaintiff against a Sovereign without not even a glance of its

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 4

position, inference, interpretation or discussion or any background information of the evolution of state law provisions as a spin-off legislation from a chosen date of 1986. Since there is no answer to the complaint nor any discovery has been conducted, the constitutional issues are just approaching their embryonic pretrial stages.

However, a motion for judgment on the pleadings and a motion to dismiss are ordinarily accorded much the same treatment. *See* Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir.1998); Lanigan v. Vill. of E. Hazel Crest, 110 F.3d 467, 470 n. 2 (7th Cir. 1997). One must view the facts contained in the pleadings in the light most flattering to the non-movants (herein the defendants) and draw all reasonable inferences therefrom in their favor. Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment. Rivera-Gómez, 843 F.2d at 635. There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole. *See* Aponte-Torres v. University Of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006).

## IV. LEGAL DISCUSSION

**A.    Constitutional Claims.**

Plaintiff claims an equal protection violation in Regulation No. 8 as a non-roofed public parking facility and as to others similarly situated vis a vis parking facilities which are roofed and may solicit a special authorization to be exempt from said regulation.

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 5

     Constitutional law development has established purely economic classifications will be upheld against equal protection challenges if they are rationally related to a legitimate governmental interest. U.S.C.A. Const.Amend. 14. A presumption of rationality attaches to classifications which do not involve a suspect classification or impinge upon fundamental rights. While the First Amendment on its face does not specifically mention the right to freedom of association, the Supreme Court has declared that the First Amendment encompasses a right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *See* <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252 (1984) (holding that the freedom of association must yield to "regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms").

     The Supreme Court has afforded constitutional protection to freedom of association in two distinct senses. First, the Court has held the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities. <u>Board of Dirs. of Rotary Int'l v. Rotary Club</u>, 481 U.S. 537, 544, 107 S.Ct. 1940, 1945 (1987). None of these associations is invoked in the present action, rather one geared towards purely economic and commercial ends and as affected by Regulation No. 8 on public parking facilities.

     As a general rule, federal courts, respecting the right of local self-determination, employ the prophylaxis of the equal protection clause only to ensure the existence of some rational

relationship between a challenged statute and the legitimate ends of local government. *See, e.g.*, Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 108 S.Ct. 2481, 2487 (1988). As a matter of federal constitutional law, the Commonwealth of Puerto Rico needs only to demonstrate a rational basis for the laws and regulations herein in order to defeat an equal protection challenge. *See* Hodel v. Indiana, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387 (1981) ("Social and economic legislation that does not employ suspect classifications or impinge on fundamental rights must be upheld ... when the legislative means are rationally related to a legitimate government purpose."); *see also* Tenoco Oil Co. v. Dept. of Consumer Affairs, 876 F.2d 1013, 1021 (1st Cir.1989). "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." New Orleans v. Dukes, 427 U.S. 297, 303-04, 96 S.Ct. 2513, 2516-17 (1976) (*per curiam*).

The concurring opinion in Roberts is illustrative of the freedom of association when constitutional violations are raised, as in the instant case. Once it is determined whether the association is considered expressive or commercial, the degree of constitutional protection it requires can be properly assessed. If the association is expressive, it would be entitled to full First Amendment protection of both the content of its message and the choice of its members, without need for a connection between the group's message and its membership policy. If on the other hand, if the association is commercial, as in the instant case, it "enjoys only minimal constitutional protection of its recruitment, training, and solicitation activities" and the regulation claimed as discriminatory need be only rationally related to the government's ends. "The Constitution does not guarantee a right to choose employees, customers, suppliers, or those

with whom one engages in simple commercial transactions, without restraint from the State." Roberts, 468 U.S. at 634-35.  *See also* New York State Club Ass'n v. City of New York, 487 U.S. 1, 20, 108 S.Ct. 2225 (1988) ("Predominately commercial organizations are not entitled to claim a First Amendment associational or expressive right to be free from the anti-discrimination provisions triggered by the law.").

Likewise, in affirming the constitutionality of *e.g.*, anti-trust laws, the Supreme Court determined by definition such laws regulate the ways in which market players may pool their capabilities to acquire market power. While a State cannot regulate the right of speakers to band together to convey a common message in the marketplace of ideas, it certainly could exercise control over the efforts of market players to exploit the principle of strength in numbers in the marketplace of goods. *See* United States Jaycees, 468 U.S. at 638, 104 S.Ct. 3244 (1984) (positing that "there is only minimal constitutional protection of the freedom of commercial association," *id.* at 634, 104 S.Ct. 3244, and that, in all events, "no First Amendment interest stands in the way of a State's rational regulation of economic transactions by or within a commercial association"). *See also* Kathleen M. Sullivan, *Free Speech and Unfree Markets*, 42 U.C.L.A. L.Rev. 949, 950 (1995) (*observing* that, in the modern constitutional order, legislatures are free to pass laws "that override private economic arrangements on allocative grounds--such as correcting for collective action problems, externalities, information asymmetries, or monopolies--or for reasons of redistribution or paternalism"). *See* Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 51-52 (1st Cir. 2005).

Case 3:06-cv-02092-JAG Document 29 Filed 04/20/07 Page 8 of 17

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 8

In light of the above discussed, it is now proper to discuss the regulation enacted by Secretary García Padilla, which plaintiff International Parking objects on constitutional grounds.

Defendant Secretary García Padilla, as Secretary of DACO, promulgated a regulation to develop the public policy of the Commonwealth of Puerto Rico pursuant to Law No. 120 of June 7, 1973, Law No. 5 of April 23, 1973 and Law No. 170 of August of 1988, as amended, which creates and grants power and authority to DACO.

Plaintiff's contentions of a constitutional violation are rooted in being denied the equal protection of the laws when "Regulation No. 8", governing public parking facilities, provides that roofed parking business are exempt and further limited such application to roofed parking built after June 7, 1986. Plaintiff International Parking, as uncovered parking facility would be governed by the applicable regulations and the corresponding maximum rates allowed by DACO. Thus, it is plaintiff's contention that to adopt such a date without any reasonable justification results in an arbitrary and capricious application of said regulation.[1]

Equal protection does not forbid all kind of classifications, but invidious ones, those which treat persons differently who are in all relevant respects alike. Still, classifications may be rationally related to a legitimate government interest and if these do not burden a fundamental right or target a suspect class, only a rational basis standard analysis is required to sustain same.

---

[1] Plaintiff International Parking failed to submit the regulation referred to in its motion for judgment of the pleadings and the available copy obtained by this Magistrate Judge is the one filed with the Department of State in the Spanish language. Thus, plaintiff has not submitted the English language document nor the translation of the pertinent portions of the regulation which serve as ground for its claim.

Case 3:06-cv-02092-JAG   Document 29   Filed 04/20/07   Page 9 of 17

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 9

The general purposes of the Regulation for Public Parking Areas, Regulation No. 6753, approved January 22, 2004, acknowledge the demand for more parking areas. On one hand, it aims to foster private investors to construct and build new parking areas. On the other hand, it attempts to protect public interest to regulate this type of business as to maximum rates they could charge and the conditions of safety and convenience for the public. It exempts those parking areas that have no direct profit as a goal and which may be used by customers, clients or individuals related to a business or activity being carried out.

As to public parking areas for profit in general, roofed and unroofed, the regulation provides for compliance with several provisions, including granting, renewal and withdrawal of licenses or permits, provides for administrative reviews of objections, establishes requirements for the operation of these parking areas and establishes a maximum rate to be charged to individuals who use the parking areas.

Plaintiffs herein are objecting on constitutional grounds Regulation No. 8 regarding the maximum rate applicable either for roofed or open-air parking facilities.[2] Regulation 8, item E provides for roofed public parking areas that are built after June 7, 1986, may be exempt from control over their rates. To request such an exemption, and be provided with a special authorization, the Secretary of DACO would determine the date said authorization becomes due

---

[2] Regulation No. 4 also refers to public parking areas in open plots of lands by providing the endorsement of the Department of Natural Resources regarding the trees to be placed as per Law No. 37 of January 3, 2003, must also be complied.

Case 3:06-cv-02092-JAG   Document 29   Filed 04/20/07   Page 10 of 17

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 10

upon considering the financing period of the construction, and if there is no financing, the special permit then becomes due or expires fifteen (15) year from the granting of the special authorization.

Plaintiff avers that the selected date of June 7, 1986 is not explained or justified in the available record. As such, plaintiff considers the application of this exemption for roofed public parking as arbitrary and capricious.

Plaintiff avers this regulation does not seem to advance any legitimate government goal and deprives plaintiff and other similarly situated unroofed public parking facilities of the equal protection of the laws and also constitutes a taking of property without due process of law. Declaratory judgment and injunctive relief sought by plaintiff fails to discuss or debate whether a public interest is involved when the incentive by "Regulation 8" as to roofed public parking areas is provided pursuant to the intention of its provisions. These constitutional claims are predicated in that Regulation No. 8 imposes upon an operator of a non-roofed facility a maximum fare to be charged per hour, without imposing any such restriction upon any operator of a roofed parking facility, in any form or fashion.

A mere reading of the whole regulation, as it is registered with the Department of State of the Commonwealth of Puerto Rico, not a mere recital of Regulation No. 8, refutes plaintiff's presentation.[3] Still, even without the benefit of defendant's position, disregarding the date therein of June 7, 1986, there is a rational basis for the exemption when dealing with a public

---

[3] The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein, such as the whole regulation filed with the Department of State of the Commonwealth of Puerto Rico and facts susceptible to judicial notice.

parking building or construction, that is, roofed facilities. It becomes evident it is more costly to operate a public parking area when it entails a construction and not an open space. For this reason, it provides an incentive for making such an investment when the end result would be more parking footage per area, which is part and parcel of the motives explained in the general introduction to this regulation. This represents a reasonable attempt to effectuate the goal as to the need to cover the demand for more parking areas, particularly in high density populated or business locations. *See Regulation 3, General Purposes*.

  Additionally, it must be noted, herein plaintiff did not submit the regulation at issue with the complaint nor with its motion requesting judgment on the pleadings, or any relevant portion thereof with its corresponding translation into the English language. Plaintiff solely provided its interpretation and summary of the alleged portion of the regulation it objects. Regulation No. 8 cannot be examined in a vacuum, more so when issues of alleged constitutional dimension are being claimed. Legislation and regulations thereunder must demonstrate "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne v. Flores, 521 U.S. 507, 520, 117 S.Ct. 2157 (1997).

  Although the date in Regulation No. 8 of June 7, 1986, referring to roofed public parking areas, appears without any explanation, the regulation may well survive its public interest approach to roofed and unroofed public parking lots without such date constriction since we cannot say that the provision reflects a policy which is so clearly irrational on its face

Case 3:06-cv-02092-JAG   Document 29   Filed 04/20/07   Page 12 of 17

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 12

as to be arbitrary, capricious, and an abuse of discretion.[4]

Furthermore, we cannot lose sight of the fact that constitutional considerations may be avoided when a logical interpretation of the provision so otherwise warrants. Thus, "prior to reaching any constitutional questions, federal courts must consider non-constitutional grounds for decision." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99, 101 S.Ct. 2193 (1981) (*citing* Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347, 56 S.Ct. 466 (1936)). *See* Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006).

Finally, a perusal of Regulation No. 6753 as a whole in the instant case, which entails in its item 8 the provision objected by plaintiffs (referred at all times as Regulation No. 8), does not constitute a taking of property without due process of law as argued by plaintiff's judgment on the pleadings as explained herein below.[5]

Regulation No. 6753 provides for administrative claims to be filed and reviewed upon holding a hearing pursuant to procedures established under Law No. 170 of August 12, 1988, as amended. The administrator of public parking facilities may also request reconsideration to DACO as to any maximum rate Resolution it had issued. Reconsideration or review may also be obtained each natural year when reasonable profits are not obtained with the maximum rate established. A new administrator who inherits the rate of the former administrator may seek

---

[4] A different analysis may have ensue if the claim had been filed by other roofed public parking facilities which were built just prior to June 7, 1986, and cannot reasonably see the different treatment afforded as to them. However, plaintiff International Parking has not standing to represent other roofed public parking facilities.

[5] The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. See Dolan v. Tigard, 512 U.S. 374, 383-84, 114 S.Ct. 2309 (1994).

review of the rate within ninety (90) days of start of operations. *Regulation 7.*[6]

Plaintiff herein has not submitted any arguments it availed itself of the provisions to obtain review of the rates nor that same do not allow to attain a profit or even having received an adverse and unreasonable determination in violation of due process. For all purposes, plaintiff has not shown it availed itself of the mechanism provided by the challenged rule to seek redress before attacking the constitutionality of the provisions in this forum nor has it argued that such effort would have been fruitless. Accordingly, plaintiff's averment of undergoing a taking without due process cannot pass muster.

**B. Section 1983 claims - Qualified Immunity**.

Plaintiff has also filed action against co-defendant Secretary García Padilla in his personal capacity for acting under color of law in the deprivation of plaintiff's rights, privileges and immunities when implementing an unconstitutional policy and in denying to plaintiff's equal protection and due process. If default had not been entered, defendant García Padilla could have reasonably raised entitlement to the protection of qualified immunity, once it is established having followed a neutral and reasonable application of regulations consonant with the purposes and goals of sound public policy. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

---

[6] Plaintiff is apprised that upon seeking review and/or appeal of this report and recommendation, it should comply with the required reference to English translation of documents in that the United States District Court for the District of Puerto Rico must sift out non-English materials, and parties should submit only English language materials. *See* Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81 (1st Cir. 2004); *see also* Estades-Negroni v. Associates Corp. of North America, 359 F.3d 1 (1st Cir. 2004).

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 14

   The Court of Appeals for the First Circuit has identified a three step process for evaluating qualified immunity claims, to wit; 1) whether the claimant has alleged the deprivation of an actual constitutional right; 2) whether the right was clearly established at the time of the alleged action or inaction; and 3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999); Nelson v. Kline, 242 F.3d 33 (1st Cir.2001); Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir.2001); *see* Mihos v. Swift, 358 F.3d 91, 102 (1st Cir.2004); Starlight Sugar, Inc., v. Soto, 253 F.3d 137, 141 (1st Cir. 2001).

   The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages. "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Nereida-González v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993); *see* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, (1982); Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998). In deciding whether an officer is entitled to qualified immunity, the Court must first determine whether the officer's alleged conduct violated a constitutional right. Chávez v. Martínez, 535 U.S. 1111, 122 S.Ct. 2326 (2002) (*citing* Saucier v. Katz, 533 U.S. at 201, 121 S.Ct. 2151). "If not, the officer is entitled to qualified immunity, and [the Court] need not consider whether the asserted right was "clearly established." " *Id*.

As the First Circuit Court of Appeals has noted, "[t]his particular order of analysis 'is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." ' " *Id.* (citations omitted). Addressing the constitutional question first "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id*. In the present case even if the first two questions might be answered in the affirmative, it must then be determined whether defendant García Padilla believed that the action taken violated a clearly established constitutional right. "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003) (*quoting* Ryder v. United States, 515 U.S. 177, 185, 115 S.Ct. 2031 (1995)). For these reasons, the Court has expressed that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id*. *See* Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

Plaintiff International Parking''s claim against defendant Secretary García Padilla is the alleged violation of Equal Protection as secured by the United States Constitution as to application of Regulation No. 8. Plaintiff's equal protection claims under the United States Constitution would not be found herein in the absence of invidious classification or discriminatory animus, which is not present under the regulations object of this action, neither

International Parking Management Inc. v. Alejandro Garcia Padilla
Civil No. 04-2092 (JAG)
Report & Recommendation
Page No. 16

on the face of said provisions nor its application. Section 1983 does not confer substantive rights. It solely provides a venue for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-394 (1989).

For judgment on the pleadings to be entered, the moving party must establish being entitled to same. There is no showing in plaintiffs' complaint defendant Secretary García Padilla's conduct in his personal capacity deprived a person of rights, privileges or immunities secured by the Constitution of the United States; Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 561-562 (1st Cir.1989) (*quoting* Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598 (1976)). Thus, Secretary García Padilla would be entitled to qualified immunity in his personal capacity, if the Court adopts the first part of this report and recommendation finding the provisions at issue not arbitrary or capricious and plaintiff unable to claim on the pleadings a constitutional violation.

## V. CONCLUSION

In view of the foregoing, this Magistrate Judge recommends judgment on the pleadings (Docket No. 10) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 20th day of April of 2007.

                **s/CAMILLE L. VELEZ-RIVE**
                **CAMILLE L. VELEZ-RIVE**
                **UNITED   STATES   MAGISTRATE   JUDGE**