**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

INTERNATIONAL PARKING MANAGEMENT,
INC.,

      **Plaintiff(s)**

        **v.**

ALEJANDRO GARCIA PADILLA

      **Defendant(s)**

**CIVIL NO.** 06-2092(JAG)


**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Pending before the Court is a motion for judgment on the
pleadings, filed by plaintiff International Parking Management,
Inc. ("IPM") on December 15, 2006. (Docket No. 10). On April 20,
2007, Magistrate Judge Camille Velez-Rive issued a Report and
Recommendation ("R & R") to **DENY** the motion. Upon de novo review,
the Court **ADOPTS** the R & R and **DENIES** the motion for judgment on
the pleadings.

**FACTUAL AND PROCEDURAL BACKGROUND**

    On October 30, 2006, IPM, a private, for-profit corporation
organized under the laws of the Commonwealth of Puerto Rico, filed
a complaint against defendant Alejandro Garcia-Padilla ("Garcia-
Padilla" or "defendant"), Secretary of the Department of Consumer
Affairs ("DACO"), in his personal and official capacity under Title
42 U.S.C. § 1983.

Civil No. 06-2092 (JAG)                                              2

IPM duly executed summons on defendant Garcia-Padilla, who failed to timely answer the Complaint. On November 27, 2006, IPM filed a motion for entry of default, which the Court granted on the next day. On December 14, 2006, defendant filed a motion to set aside the entry of default. IPM then filed a "Motion for Judgment on the Pleadings or for Default Judgment" pursuant to Fed. R. Civ. P. 12(c) on December 15, 2006. The Court denied the motion to set aside and referred the Motion for Judgment on the Pleadings to Magistrate Judge Camille Velez-Rive ("Magistrate Judge") on December 19, 2006. On January 4, 2007, Secretary Garcia-Padilla filed a motion for reconsideration of the motion to set aside, which this Court denied on January 17, 2007.

IPM's suit challenges the constitutionality of Rule Number 8 of Regulation 6753--Regulation of Areas of Public Parking-- promulgated by DACO and approved on January 22, 2004. The broader Regulation 6753 ("Regulation"), controls the operation of parking facilities in Puerto Rico. Rule Number 8 establishes the maximum amount of money per hour which operators of roofed and non-roofed parking facilities in Puerto Rico may charge users of these facilities. Roofed facilities built after June 7, 1986 are allowed an exemption from mandatory caps on the prices charged users of those facilities, while non-roofed facilities are not eligible for the exemption. The Complaint alleges that this exemption is arbitrary and capricious and that, since IPM operates both roofed

Civil No. 06-2092 (JAG)                                          3

and non-roofed facilities, such a distinction in effect deprives IPM of property without due process of law.  It is further alleged that the regulation subjects IPM to dissimilar legal treatment, amounting to violations of due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution.

IPM seeks an injunction against defendant and his agents barring further enforcement of Rule Number 8, a declaratory judgment holding it unconstitutional because it violates due process and equal protection of the laws, and attorney's fees and costs of litigation under 42 U.S.C. § 1988.

On April 20, 2007, Magistrate Judge Velez-Rive issued a Report and Recommendation (R&R) in which she found that judgment on the pleadings was unwarranted because Rule Number 8, on its face and as applied: 1) was reasonably tailored to the legitimate state interest of attracting private investments in roofed parking facilities to meet the growing demand for public parking spaces; 2) satisfied rational basis review within the purview of the Regulation, which sought to strike a balance between providing incentives for private investment in public parking facilities and protecting consumers with price controls; 3) did not constitute a taking of private property without due process of law because IPM failed to first employ the Regulation's provision for administrative review and reconsideration of maximum hourly parking rates set by DACO; and 4) did not violate the Equal Protection

Civil No. 06-2092 (JAG)                                          4

Clause because the classification lacked invidiousness or discriminatory animus. Finally, the Magistrate Judge concluded that Secretary Garcia-Padilla, in his personal capacity, would have been immune from IPM's § 1983 suit on the basis of the aforementioned findings.

## STANDARD OF REVIEW

A. <u>Standard for Reviewing a Magistrate Judge's Report and Recommendation</u>

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. <u>See</u> 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72(d), the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. §636(b)(1). The Court must then make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which the objection is made. <u>See</u> <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez v. Chater</u>, 8 F.Supp.2d 152, 154 (D.P.R. 1998). The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations. "Failure to raise objections to the Report or Recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." <u>Davet v. Maccarone</u>, 973 F.2d

Civil No. 06-2092 (JAG)                                          5

22, 30-31 (1st Cir. 1992)(citations omitted).

B. <u>Standard for Motion for Judgment on the Pleadings</u>

A motion for judgment on the pleadings is governed by Fed.R.Civ.P 12(c). Rule 12(c) allows a party "[a]fter the pleadings are closed but within such time as not to delay the trial, [t]o move for judgment on the pleadings." Because the court is tasked with rendering judgment on the merits at such an early stage in the proceeding, it must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. <u>Id.</u> The Court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. <u>Cf</u> <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 15-16 (1st Cir. 2003)(recognizing this principle in the context of Rule 12 (b)(6)). There is no resolution of contested facts in connection with a Rule 12(c) motion; a court may enter judgment on the pleadings only if the relevant facts conclusively establish the movant's claim. <u>Rivera-Gomez v. de Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988); <u>R.G. Financial Corp. v. Vergara-Nunez</u>, 446 F.3d 178, 182 (1st Cir. 2006).

**DISCUSSION**

A. <u>IPM's Objections to the R & R</u>

IPM filed an objection to the R & R on May 4, 2007 and a supplemental objection on May 7, 2007. IPM submits that the Magistrate Judge exceeded her authority in finding "purported legitimate state interests" behind the distinction between roofed

Civil No. 06-2092 (JAG)                                                    6

and unroofed facilities. (Docket No. 30-1 at 5; Docket No. 31-2 at
5). The Magistrate Judge identified the state's economic interests
in the regulation of public parking rates via the Regulation's Rule
3, "general purposes" provision. Based on this provision, the
Magistrate Judge surmised that the central purpose of Rule 8 was
essentially encapsulated by Rule 3, to wit, to meet the growing
demand for public parking spaces by stimulating private sector
construction of new public parking facilities, while regulating
these businesses as to the maximum rates they may charge consumers
and as to the conditions of public security and convenience.
(Docket No. 29 at 9).

    Recognizing the economic nature of the Regulation, IPM walks
through a brief twentieth-century history of the evolution of the
United States Supreme Court's doctrine of judicial review of equal
protection challenges to economic legislation. Pointing to
Metropolitan Life Insurance Co. v. Ward, 470, U.S. 869 (1985),
where the Court ruled that Alabama's goal of developing its
insurance industry was impermissibly advanced by imposing a higher
tax rate to foreign insurance companies than domestic insurance
companies, IPM maintains that economic legislation laden with
discriminatory purposes is not immune from constitutional attack.

    Next, IPM agrees with the Magistrate Judge in finding that
Rule 3 of the Regulation states the general purposes of the
Regulation. Noting, however, that the remainder of the Regulation,
particularly Rule 8, is silent as to its purposes, IPM departs from

Civil No. 06-2092 (JAG)                                        7

the Magistrate Judge's reasoning harmonizing Rule 8 with Rule 3.
Here, IPM attempts to analogize Rule 8 with the legislation struck
down in <u>Metropolitan Life Insurance Co.</u> by asserting that the
distinction cannot possibly advance the Regulation's general
purposes or those purposes identified by the Magistrate Judge.

    IPM bases this charge on two arguments: First, that the
Regulation rests upon faulty assumptions, namely, that roofed
facilities are more secure than unroofed facilities and inherently
have more parking spaces. Second, that the distinction
paradoxically reduces the number of new unroofed parking spaces by
discouraging investment from less financially established outfits
that would otherwise rely on the profits incurred from unregulated
hourly parking rates. To further the contention that the need for
more public parking spaces is a disingenuous state interest, IPM
notes the ostensibly clashing goals between the billions of dollars
invested by the government of Puerto Rico in public transportation
to reduce automobile congestion in the San Juan Metropolitan area,
and the aims of the Regulation.

B. <u>Analysis</u>

    Since the Magistrate Judge applied rational basis scrutiny to
the challenged Regulation in order to assess the merits of IPM's
due process and equal protection claims, this Court reviews <u>de novo</u>
the proper tier of judicial scrutiny to apply, and then considers
the individual constitutional claims in kind.

Civil No. 06-2092 (JAG)                                                8

    1. <u>Rational Basis as the Proper Level of Judicial Scrutiny</u>

    The Magistrate Judge described the Regulation as "one geared toward purely economic and commercial ends and as affected by [Rule] Number 8 on public parking facilities." (Docket No. 29 at 5). This Court is in agreement with that description. According to its Rule 1, the Regulation was adopted and promulgated in conformity with the powers bestowed on the Secretary of the DACO by virtue of Law No. 120 of June 7, 1973, Law No. 5 of April 23, 1973 and Law No. 170 of August 12, 1988, as respectively amended. Law No. 120 empowers the Secretary to, <u>inter alia</u>, regulate the operation of public parking areas, including fixing the rates to be charged in said public parking areas. 23 L.P.R.A. § 807(1). Law No. 5 more generally empowers the Secretary to, <u>inter alia</u>, regulate and fix the prices on goods, products and services that are rendered and charged by the hour in Puerto Rico, and to protect consumers from unjustified raises in prices and the erosion of consumer purchasing power through the promulgation and enforcement of regulations. 3 L.P.R.A § 341e(a). Finally, Law No. 170 grants DACO, among other administrative agencies, the authority to issue regulations in the resolution of administrative matters affecting the public policy of Puerto Rico. 3 L.P.R.A. § 2101.

    Thus, since the Regulation, in conjunction with these laws, is promulgated and enforced in order to govern a particular sphere of Puerto Rico's economic activity, and IPM complains of an unlawful taking of profit resulting from that Regulation, it is obvious that

Civil No. 06-2092 (JAG)                                        9

IPM's constitutional challenges invoke a clash between individual economic rights and the state's power to regulate its own economy.

In light of the nature of the Regulation and the economic injury claimed, it is clear that the proper judicial inquiry will employ a means-end analysis under rational basis review.[1] The rational basis test applies to state and local government action via the Fourteenth Amendment, since those claims subject to that review--due process and equal protection--apply to the states. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160(1980)(reaffirming incorporation of the Fifth Amendment's prohibition against taking of private property without due process of law into the states); See also Lovato v. New Mexico, 242 U.S. 199 (1916)(due process under the Fifth Amendment applies to those persons within the jurisdiction of U.S. territories). Thus, the question presented is whether Puerto Rico's application of a maximum public parking rate to non-covered parking facilities and not to covered parking facilities constructed subsequent to June 7, 1986 is rationally related to its efforts to meet the growing demand for public parking spaces by stimulating private sector construction of new public parking facilities while protecting the consumer from price inflation.

---

[1] Furthermore, IPM's motion does not urge the Court to employ heightened scrutiny. Instead, it injects the language of rational basis review, alleging the Regulation's roofed and non-roofed distinction is "unreasonable, arbitrary and capricious..." and "[s]erve[s] no reasonable government goal." (Docket No. 10 at 8)

Civil No. 06-2092 (JAG)                                          10

2. Roofed and Non-roofed Classification as a Violation of
Equal Protection

The crux of IPM's equal protection argument is that the
exemption erects a financial hurdle to those less-established
outfits seeking to break into the business of constructing and
operating roofed facilities, and fails to set forth a legitimate
"public interest" by not including any roofing specifications.
(Docket No. 1 at 7). Consequently, Rule 8 creates, without a
rational basis, two different economic classes of parking facility
operators, those with the financial wherewithal to roof their
facilities and those without. IPM also alleges, without
elaboration, that "market and geographic factors further complicate
the process and render the Regulation unavoidably
unconstitutional." (Docket No. 1 at 7.)

This Court is in agreement with the Magistrate Judge's
conclusion that IPM fails to demonstrate either that the exemption
raises the specter of discriminatory animus, violates a fundamental
right, or treats similarly situated parking facility operators so
differently as to be wholly irrational. Rather, the exemption is
rationally related to a legitimate government interest. In
subjecting this Regulation to equal protection scrutiny, we cannot
disregard the maxim that "[t]he prohibition of the Equal Protection
Clause goes no further than invidious discrimination." Williamson
v. Lee Optical Co., 348 U.S. 483, 489 (1955). It is axiomatic that
"[s]ocial and economic legislation...that does not employ suspect

Civil No. 06-2092 (JAG)                                            11

classifications or impinge on fundamental rights must be upheld
against equal protection attack when the legislative means are
rationally related to a legitimate government purpose." <u>Hodel v.</u>
<u>Indiana</u>, 452 U.S. 314, 331 (1981). Such legislation carries with it
a presumption of rationality that can only be overcome by a clear
showing of arbitrariness and irrationality. <u>Duke Power Co. V.</u>
<u>Carolina Environmental Study Group, Inc.</u>, 438 U.S. 59, 82-84
(1978); <u>Usery v. Turner Elkhorn Mining Co.</u>, 428 U.S. 1, 15 (1976).
The burden of demonstrating that a legislative act, which adjusts
the interlocking economic rights and duties of businesses and
government, is irrational, falls squarely on the one complaining of
the act's conflict with the Constitution. <u>Williamson v. Lee Optical</u>
<u>Co.</u>, 348 U.S. at 487-88. The burden is a severe one, requiring that
the plaintiff "negative every conceivable basis which might support
the state's actions." <u>Heller v. Doe by Doe</u>, 509 U.S. 312, 320
(1993).

     In this case, the Court cannot overlook that Rule 8 does not
exist in a vacuum. It operates within the broader context of the
Regulation and pursuant to Law 120, Law 5, and Law 170. <u>See</u> <u>Davis</u>
<u>v. Michigan Dept. of Treasury</u>, 489 U.S. 803, 809 (1989)("It is a
fundamental canon of statutory construction that the words of a
statute must be read in their context and with a view to their
place in the overall statutory scheme."); <u>see</u> <u>also</u> <u>United States v.</u>
<u>Stewart</u>, 311 U.S. 60, 64 (1940)(explaining that "all [statutory and
regulatory] acts *in pari materia* are to be taken together as if

Civil No. 06-2092 (JAG)                                          12

they were one law")(italics in original).

     Rule 8 of the Regulation provides, in pertinent part, that

"[t]he covered public parking areas, which begin to be constructed

subsequent to June 7, 1986, may be exempted from rates control. To

obtain said exemption, the operator must request in writing from

the Secretary the issuance of a special authorization." In

addition, the Secretary must include in the special authorization,

the expiration date of the authorization. "In order to set the said

date the financing period of the construction shall be taken into

consideration. In the cases in which such financing does not exist,

the expiration date shall be fifteen (15) years from the issuance

of the authorization."  Furthermore, Rule 3 of the Regulation

reads:

          The growing demand for more parking areas, mainly in the zones
          of greater population and commercial growth make it necessary
          that the Department review and exercise the regulatory power
          entrusted to it by legislation, in a manner which allows and
          stimulates the investors of the private sectors in the
          construction of new parking areas.

          In protection of the public interest, said business must be
          regulated in regards to the maximum rates which may be charged
          and in regards to the security conditions and convenience for
          the public.

     Reading the statutory scheme together rebuffs IPM's averment

that the exemption is not rationally related to the goals of Rule

3. The Court is hard-pressed to say that the provision reflects a

policy judgment that is so clearly irrational as to rise to the

level of invidious discrimination and to require the substitution

of a judicially crafted one. Defendant's enforcement of Rule 8 may

Civil No. 06-2092 (JAG)                                           13

not always succeed in generating adequate investment for the
construction of secure and convenient parking facilities or
protecting consumers from unreasonable parking rates. It may even
be inconsistent with past, present and future planned government
policies or actions. The Rule, however, need not be logically
consistent in every respect with its aims to be constitutional.
Williamson v. Lee Optical Co., 348 U.S. at 487-88; See also Hughes
v. Alexandria Scrap Corp., 426 U.S. 794, 813 (1976)("a statutory
classification impinging upon no fundamental interest...need not be
drawn so as to fit with precision the legitimate purposes animating
it"). Nevertheless, the exemption genuinely strives to offer a
financial incentive for the private sector to construct more
covered parking areas, especially in urban areas with more limited
space, and thus achieve more parking spaces per square footage.

     Furthermore, there is no merit in IPM's charge that because
the assumptions underlying the goals of the Regulation are flawed,
Rule 8 cannot possibly advance the economic interests of the state.
Without IPM demonstrating why covered, leveled parking facilities
cannot offer more parking spaces and are less secure and less
protective than non-covered facilities, common sense and the
judgment of DACO dictates that reliance on these assumptions is a
wiser choice. See FCC v. Beach Communications, Inc., 508 U.S. 307,
313 (1993)(rational basis review in equal protection analysis "is
not a license for courts to judge the wisdom, fairness or logic of
legislative choices."). As with the bygone days where courts used

Civil No. 06-2092 (JAG)                                              14

the Due Process Clause to strike down laws that were unwise and improvident, here too, this Court refuses to do the same under the aegis of equal protection, provided the classification is not suspect or invidious. See Williamson v. Lee Optical Co., 348 U.S. at 487-88 (rejecting the era of Lochner when state legislation was more vulnerable to due process challenges). IPM has simply not carried its burden to show these assumptions infect Rule 8 so insidiously as to render it arbitrary and capricious. Id. at 487-88. Nor has IPM given any explanation how "market and geographic factors" compound the invalidity of Rule 8. In light of the presumption favoring Secretary Garcia-Padilla's judgment and competency on the prices of goods and services affecting consumers, this Court will not guess what those "factors" are and then postulate their constitutional significance.

The Court also does not find that the June 7, 1986 cut-off date and the 15-year expiration period render the Regulation unconstitutional. While neither Rule 8 itself nor the legislative history behind it explain or justify the June 7, 1986 date for effectuation of the exemption and the 15-year period until expiration of the exemption, the silence of these provisions alone does not render Rule 8 unconstitutional. The same holds for the Rule's absence of roofing specifications. For purposes of rational basis review of equal protection challenges, a government decision maker need not articulate at any time, the purpose or rationale supporting its classification. Nordliner v. Hahn, 505 U.S. 1, 15

Civil No. 06-2092 (JAG)                                              15

(1992). Indeed, even without any source materials to provide the
basis for a state's actions, the government is presumed to have
acted constitutionally. See McDonald v. Board of Election Comm'rs
of Chicago, 394 U.S. 802, 809 (1969)(a legitimate state purpose may
be ascertained even when the legislature or administrative history
is silent). As the Magistrate Judge correctly implied, the relation
between the Regulation's means and its end is rational enough to
overcome the seemingly arbitrary cutoff date and expiration period
provisions.

        Rational basis scrutiny does not require the regulation to be
an architectural blueprint or to be self-justificatory in every
respect. See Dandridge v. Williams, 397 U.S. 471, 485 (1970)("A
classification having some reasonable basis does not offend against
that clause merely because it is not made with mathematical nicety,
or because in practice it results in some inequality")(quoting
Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911). See
also Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000)("The
rationality commanded by the Equal Protection Clause does not
require states to match… [nonsuspect]…distinctions and the
legitimate interests they serve with razorlike precision."). It is
at least conceivable that defendant wanted to provide a financial
benefit to prospective builders of roofed parking facilities and
those who had already constructed such facilities after June 7,
1986, but decided to impose a cutoff date so as to not allow for
the exemption of *every* roofed facility ever constructed. It is also

Civil No. 06-2092 (JAG)                                                16

plausible that the 15-year period for exemption was calculated to
help offset the burden of financed construction costs paid back
over a reasonable period of time. However, the degree of accuracy
of court-supplanted rationales need not matter. The provisions
satisfy equal protection scrutiny so long as such a conceivable
state of facts could arguably bear a rational relation to
stimulating private construction of public parking facilities and
protecting the consumer from unhindered parking prices. McDonald v.
Board of Election Comm'rs of Chicago, 394 U.S. at 809. An
examination of the challenged provisions within the scope of the
Regulation convinces the Court that they have this effect. They are
not so attenuated from the Regulation's general purposes as to
insult the meaning of equal protection.

    Lastly, IPM's reliance on Metropolitan Life Insurance Co. is
misplaced.  In Metropolitan Life Insurance Co., the Court found
that Alabama's aims to promote its domestic insurance industry and
encourage investment in its assets and securities were illegitimate
state goals because the tax scheme employed to achieve them heavily
favored domestic insurance companies over foreign ones.
Consequently, it drew an impermissible classification based on
residence. Alabama's purpose was found to be parochially
discriminatory because it attributed higher tax liability to *all*
foreign insurance corporations seeking to do business in Alabama,
regardless of the cost to them. Thus, the case triggered the long-
standing principle that the Equal Protection Clause forbids a state

Civil No. 06-2092 (JAG)                                        17

to discriminate in favor of its own residents solely by burdening
the residents of other states. See, e.g., WHY, Inc. v. Glassboro,
393 U.S 117, 119-20 (1968); Wheeling Steel Corp. v. Glander, 337
U.S. 562, 571 (1949); Hanover Fire Ins. Co. v. Harding, 272 U.S
494, 511 (1926).

        No such suspect classification is invoked here. Moreover,
unlike in Metropolitan Life Insurance Co., where foreign
corporations had no alternative to avoid the tax, IPM is not
outright punished, without exception, for the nature of its
business. It merely cannot receive a state-bestowed privilege
inasmuch as its own financial limitations prevent it from
constructing and operating roofed facilities. Indeed, to obtain the
privilege, an operator must still apply and receive special
authorization from the Secretary. IPM is not statutorily precluded
from availing itself of the exemption, as it is legally available
to all similarly situated businesses. Without IPM's explanation of
how the Regulation is as circumstantially restrictive as the cited
case law, the claim lacks support for an analogy between the
classifications.[2]

        Thus, in the face of this relatively relaxed standard of
review and the stringent requirements necessary to overcome it, no

---

        [2] In fact, in Metropolitan Life Insurance Co., 470 U.S. at fn.
10, the Court specifically noted that the case did not question
the state's broad power to regulate its own economy. Since this
Regulation operates, both on its face and as applied, pursuant to
laws, which vest in the Secretary of DACO the power to control
the prices of goods and services within its borders, this case
more readily implicates such powers.

Civil No. 06-2092 (JAG)                                                   18

equal protection violation lies.

    3. <u>Price Control as Amounting to "Taking" of Property Without Due Process of Law</u>

    The analysis in section B(2), reveals that Rule 8 does not constitute a taking of property without due process of law, as argued by IPM.

    First, a long list of cases regarding claims of governmental takings by price controls confers on Rule 8 a general presumption of constitutionality, provided certain due process conditions are met. As in the equal protection context, in the realm of governmental price regulation of the products and services provided by private businesses, the guaranty of due process reaches only so far as to curtail laws and regulations that are arbitrary and discriminatory in their operation and effect. <u>Nebbia v. People of New York</u>, 291 U.S. 502, 510-511 (1934); <u>In re Permian Basin Area Rate Cases</u>, 390 U.S. 747, 769-70 (1968). The Supreme Court has long recognized that a legitimate and rational goal of price or rate regulation is the protection of consumer welfare. <u>See</u>, <u>e.g.</u>, <u>In re Permian Basin Area Rate Cases</u>, 390 U.S. at 770; <u>See also</u> <u>FPC v. Hope Natural Gas Co.</u>, 320 U.S. 591, 610-12 (1944)("The primary aim of the [Natural Gas Act] was to protect consumers against exploitation at the hands of natural gas companies"). <u>See also</u> <u>Bowles v. Willmingham</u>, 321 U.S. 503, 518 (1944)(one purpose of rent controls is "to protect…consumers, wage earners from undue impairment of their standard of living."). "[T]he Constitution does

Civil No. 06-2092 (JAG)                                              19

not forbid the imposition, in appropriate circumstances, of maximum

prices upon commercial and other activities." <u>In re Permian Basin

Area Rate Cases</u>, 390 U.S. at 768(holding as constitutional federal

regulation of gas rates charged by utility companies); <u>See also

Olsen v. State of Nebraska</u>, 313 U.S. 236 (1941)(rejecting the claim

that a state statute regulating commissions charged by private

employment agencies amounted to a taking without due process); <u>See

also Pennell v. City of San Jose</u>, 485 U.S. 1, 11 (1988)(discussing

as legitimate the City of San Jose's asserted purpose of preventing

excessive and unreasonable rent increases caused by the growing

shortage of and increasing demand for housing). Furthermore,

legislators and administrative agencies may calculate rates for a

regulated class without first evaluating the separate financial

position of each member of the class." <u>In re Permian Basin Area

Rate Cases</u>, 390 U.S. at 769; <u>See also Bowles v. Willmingham</u>, 321

U.S. 503, 518 (1944)(citing <u>Munn v. Illinois</u>, 94 U.S. 113 (1876)

for support). No constitutional objection gains force merely

because "high cost operators may be more seriously affected...than

others." <u>Bowles v. Willmingham</u>, 321 U.S. 503, 518 (1944).

        Although the circumstances of *some* of these landmark cases

involved federal regulation of commercial rates and are not

factually symmetrical to the case at bar, the principles and

reasoning behind them apply to state regulations as well. The

validity of Rule 8 is strongly supported by them and can only be

overturned by demonstrating that the Rule irrationally and

Civil No. 06-2092 (JAG)                                              20

capriciously departs from the ends Puerto Rico purportedly seeks to achieve. Nebbia, 291 U.S. at 510-511; See also Stone v. Farmers Loan and Trust Co., 116 U.S. 307, 345 (1886)(a useful benchmark for a taking is that the "power to regulate is not the power to destroy."). Consequently, due process analysis need only be guided by the governing test in Nebbia, which concerned the constitutionality of a state statute fixing the domestic price of milk. Since this Court has already concluded that the allegedly unconstitutional provisions of Rule 8 bear some relation to the goals imputed to the Regulation, there is no basis for a facial or as-applied taking without due process.

Even without the modern jurisprudence of due process illuminating the Court's review, a straightforward reading of the Regulation shows that it contains constitutionally sufficient procedural safeguards. The Regulation was crafted with the understanding that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " Matthews v. Eldridge, 424 U.S.319, 333 (1976). Although Matthews required a three-part test in determining whether the procedures provided to administratively resolve takings claims satisfy due process, it is not necessary to apply it here since IPM does not challenge the constitutionality of the Regulation's administrative remedies. Nevertheless, "[d]ue [p]rocess is flexible and calls for such procedural protections as the particular situation demands." Morissey v. Brewer, 408 U.S.

471, 481 (1972). At a minimum, some form of hearing is required before an individual is finally deprived of a property interest by the government. Id. Unequivocally, the Regulation meets this requirement in the administrative remedies it affords public parking operators.

As the Magistrate Judge noted, the Regulation provides for administrative claims to be filed and reviewed upon holding a hearing, pursuant to procedures established under Law No. 170 of August 12, 1988, as amended. Moreover, under that administrative rubric, the operator may also request reconsideration of the resolution establishing the maximum rate once annually if the operator deems that it is not obtaining a reasonable profit. To be sure, this provision strives to ensure a more objective and fair review by requiring the operator to submit to the Secretary its financial statements and other documents when requested. It is noteworthy that even DACO's resolution must be grounded in financial analysis. To establish the maximum rate, DACO must consider a report of income and expenses of the operator's business, evidence of costs, and vehicular movement.

IPM makes no showing that it availed itself of these administrative mechanisms before filing suit in this judicial forum. IPM also does not submit any set of well-pleaded facts or empirical evidence upon which the Court could conclude that the hearing and review provisions were wholly inadequate and unfair by failing to reinstate an hourly fare that would fetch a reasonably

competitive profit. Further, IPM's pleadings do not show that the provisions *actually* unjustly deprive so much profit from operators without proper remedy as to be confiscatory. IPM has not overcome its burden by demonstrating how the exemption, on its face, and as applied, amounts to an unreasonable deprivation of its profit and that the Regulation's built-in administrative procedures violate due process. Accordingly, there is no merit in IPM's claim that Rule 8 deprives it of a property interest without due process.

### 4. Section 1983 liability

The Court agrees with the Magistrate-Judge's conclusion that defendant Alejandro Garcia Padilla is entitled to qualified immunity.

In evaluating whether an official is entitled to qualified immunity, the court employs a three-part test, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004). The threshold question of whether a constitutional right has been violated is significant, for it can spare a defendant from standing trial and from other burdens of litigation. Saucier v. Katz, 533 U.S. 194, 200 (2001). Indeed, these concerns compel courts to dispose of this initial inquiry

Civil No. 06-2092 (JAG)                                              23

first before proceeding to the second and third prongs of the test. Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Construing the relevant facts and inferences most favorably to IPM, the pleadings fail to state a constitutional violation sounding either in equal protection or due process, and thus, open the door to qualified immunity. As the Magistrate Judge concluded, consistent with the language of §1983, "[t]here is no showing in plaintiff's complaint [that] defendant Secretary Garcia Padilla's conduct in his personal capacity deprived a person of rights, privileges or immunities secured by the Constitution of the United States." (R & R at 16). § 1983 does not confer substantive rights. It solely provides a venue for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Therefore, the Court's finding that the provisions of Rule 8 bear a reasonable relation to the broader Regulation's general purposes—to wit, that they are not arbitrary and capricious-- forecloses the antithetical claim of their Fifth and Fourteenth Amendment infirmities. Liability could not flow to defendant through personal actions relating to the execution and enforcement of a constitutional Rule 8.

## CONCLUSION

For the aforementioned reasons, the Court **ADOPTS** the R & R and, accordingly, **DENIES** IPM's motion for judgment on the pleadings. Judgment shall be entered dismissing the complaint.

Civil No. 06-2092 (JAG)                                          24

        IT IS SO ORDERED.

        In San Juan, Puerto Rico, this 11th day of September, 2007.

                                **S/ Jay A. Garcia-Gregory**
                                JAY A. GARCIA-GREGORY
                                United States District Judge